649 So.2d 1158 (1995)
Robert Stephen BARNETT, et ux, Plaintiffs-Appellees,
v.
Jake JABUSCH, Defendant-Appellant.
No. 94-819.
Court of Appeal of Louisiana, Third Circuit.
February 1, 1995.
*1159 J.L. Wimberly Jr., for Robert Stephen Barnett, et ux.
Noble Moore Chambers Jr., Jack Derrick Miller, for Jake Jabusch.
Before WOODARD, DECUIR, and PETERS, JJ.
PETERS, Judge.
This litigation began as a suit by Robert Stephen Barnett and his wife, Linda, for injunctive relief and damages against Jake Jabusch for violation of an oral noncompetition agreement. The agreement was a part of a purchase agreement wherein the Barnetts purchased a flea market from Jabusch. The trial court ruled in favor of the Barnetts by issuing the injunction and awarding damages. Jabusch filed a suspensive appeal from the judgment and continued to operate the flea market. In Barnett v. Jabusch, 607 So.2d 1007 (La.App. 3d Cir.1992), writ denied, 610 So.2d 820 (La.1993), this court affirmed the trial court's judgment. The matter is again before this court on appeal by Jabusch of a judgment of the trial court awarding the Barnetts additional damages for the continued operation of the flea market during the period the injunction was in force following the trial.

*1160 PROCEDURAL BACKGROUND AND GENERAL FACTS

Initial Trial and Appeal
In May of 1987, Robert Stephen Barnett, and his wife, Linda, purchased the Rayne Antique Flea Market from Jake Jabusch and his partner, Connie Menard, for the sum of $18,000.00. The purchasers acquired only the good will of the business and the current vendor list. Part of the consideration for the transfer was an agreement by Jabusch and his partner not to operate a flea market in the Rayne area as long as the Barnetts continued to operate the Rayne Antique Flea Market.
The business of the Rayne Antique Flea Market is to rent space to antique dealers so that the dealers might sell their inventory to the public. It is normally open for business on the first and third weekends of each month. In March of 1991, Jabusch opened an antique flea market across the street from the Rayne Antique Flea Market which, at the time, was the only flea market operating in Rayne. This action by Jabusch gave rise to the initial litigation. The trial court recognized the validity of the noncompetition agreement and rendered judgment enjoining Jabusch from operating an antique flea market in Rayne, Louisiana. However, the trial court limited enforceability of the agreement to September 3, 1991, which date it concluded to be two years from the effective date of the 1989 amendment to Louisiana Revised Statutes 23:921. This amendment limits application of noncompetition agreements in the purchase of the goodwill of a business to a maximum of two years.
The first judgment rendered by the trial court also awarded $8,505.00 in damages to the Barnetts for loss of profits as a result of the violation of the noncompetition agreement for the period from March of 1991, through the day of trial, or June 11, 1991.[1] This damage award was based on lost booth rentals from customers of the Barnetts who moved from the Barnetts' business location to Jabusch's reopened business. Based on the testimony of Robert Stephen Barnett and Jabusch, the trial court determined that the Barnetts lost twenty-seven booths per weekend with each booth valued at $45.00 per weekend. In his suspensive appeal of the trial court judgment, Jabusch argued that the agreement not to compete was an illegal restraint of trade and contrary to public policy and that the trial court exceeded its authority in fixing the term of the contract. We rejected those arguments. Barnett, supra.

Subsequent Trial and Appeal
The Barnetts filed this instant suit to obtain a judgment for additional damages. The only issue in these subsequent proceedings is the amount of lost profits sustained from June 11, 1991, through September 3, 1991.
The trial court awarded $5,130.00 in lost profits for that period, and Jabusch has appealed that judgment. This award was based on a loss of nineteen booths per weekend, instead of twenty-seven, at the rate of $45.00 per booth per weekend. The reduction was based on the testimony of two of the Barnetts' former customers, Mary Berzas Soileau and Betty Leger. Both testified they left the Rayne Antique Flea Market as soon as Jabusch reopened because of the physical conditions at the business location. Ms. Soileau testified she left because the mildew and dampness were damaging her merchandise, and Ms. Leger testified she left because of her allergies to mold and mildew.
The Barnetts did not appeal the trial court's reduction of the lost booth spaces from twenty-seven to nineteen. Jabusch contends on appeal that the Barnetts failed to prove by a preponderance of evidence that any of the twenty-seven booth spaces, which were the basis of the first judgment, remained with Jabusch from June 11, 1991, until September 3, 1991.

OPINION
Jabusch first asserts that the trial court erred in applying the law of the case *1161 doctrine and finding that the same number of booths remained with him from June 11, 1991, through September 3, 1991.
The law of the case doctrine concerns (a) the binding force of trial court rulings during later stages of the trial; (b) the conclusive effects of appellate rulings at the trial on remand; and (c) the rule that, ordinarily, a court of appeal will not reconsider its own rulings of law on a subsequent appeal in the same case. Petition of the Sewerage and Water Board of New Orleans, 278 So.2d 81 (La.1973). The principle is applied merely as a discretionary guide. Id. Reasons for application of the principle include the avoidance of indefinite relitigation of the same issue; the desirability of consistency of the result in the same litigation; and the efficiency and essential fairness to both sides of affording a single opportunity for the argument and decision of the matter at issue. Id.
We find that the law of the case doctrine is not applicable in determining that the booths originally lost to Jabusch remained with him during the period of the injunction. While the doctrine would be employable if the issue were the number of booths originally lost, it may not be employed to determine that the same number of booths continued to be lost to Jabusch after the first trial since that issue was not decided in the first trial. Rather, the Barnetts were required to present evidence as to the extent of their losses following the initial trial on June 11, 1991, until the noncompetition agreement expired on September 3, 1991.
The allowance of loss of profits as an element of damages is more liberal in tort actions than actions for breach of contract. Dubois v. State Through Dept. of Pub. Safety, 466 So.2d 1381 (La.App. 3d Cir.1985). Lost profits, as an element of damages for breach of contract, may be recovered where they are not speculative or uncertain in their nature and are susceptible of proof with reasonable certainty. George W. Garig Transfer, Inc. v. Harris, 226 La. 117, 75 So.2d 28 (1954).
In reviewing the trial court's determination that the same number of booths remained with Jabusch following the initial trial, we are guided by the manifest error-clearly wrong rule as set forth in Rosell v. ESCO, 549 So.2d 840 (La.1989). The Barnetts testified that none of the customers they initially lost when Jabusch opened his business returned after the first trial. According to Mrs. Barnett, although she did not go into Jabusch's business which was located across the street from the Rayne Antique Flea Market, she saw those same customers during the period in question at Jabusch's business. Ms. Soileau testified that during the period of the injunction most of the people who had moved to Jabusch's remained but that some had moved out. Also, Ms. Leger testified that after the first trial, the number of people operating in Jabusch's location remained about the same. Given the fact that the Rayne Antique Flea Market was the only such business in Rayne other than Jabusch's flea market, one can only conclude that any customer renting space from Jabusch would have been required to rent from the Barnetts, open their own business, or not do business in Rayne had Jabusch not violated the injunction prohibiting his operation of a flea market.

DISPOSITION
In light of the evidence in the record, we find no manifest error in the trial court's determination of damages. Therefore, we affirm the trial court's judgment at the cost of appellant, Jake Jabusch.
AFFIRMED.
NOTES
[1] The judgment signed by the trial court indicates the trial was held on June 1, 1991, the reasons for judgment indicate a trial date of June 11, 1991, and the minutes of the court and transcript of the proceedings indicate the trial was held on June 13, 1991. However, for the purposes of this appeal, this discrepancy is of no consequence.