758 So.2d 245 (2000)
Carl Harris HESSE
v.
CHAMP SERVICE LINE.
No. 99-1259.
Court of Appeal of Louisiana, Third Circuit.
February 2, 2000.
*246 Robert C. McCall, Erin M. Alley, Baggett, McCall & Burgess, Lake Charles, LA, Counsel for Plaintiff/Appellant-Carl Harris Hesse.
L. Paul Foreman, Raggio, Cappel, Chozen & Berniard, Lake Charles, LA, Counsel for Defendant/Appellee-Investors-Ryan.
Joe A. Brame, Brame & McCain, Lake Charles, LA, Counsel for Defendant/Appellee-The Goodyear Tire & Rubber Company.
John R. Walker, Law Offices of Jackson B. Bolinger, Lafayette, LA, Counsel For Defendant/Appellee-G.K.N. Parts, Inc.
Grayson H. Brown, Law Firm of Grayson H. Brown, Baton Rouge, LA, Counsel for Intervenor/Appellee-The Travelers Insurance Company.
(Court composed of HENRY L. YELVERTON, JIMMIE C. PETERS, MARC T. AMY, Judges.)
PETERS, J.
In this products liability and negligence case filed by Carl Harris Hesse,[1] the trial court granted summary judgment in favor of G.K.N. Parts, Inc. (G.K.N.), the alleged seller of a portable work light that allegedly shocked Mr. Hesse, and dismissed Mr. Hesse's suit. Mr. Hesse appeals that judgment.

DISCUSSION OF THE RECORD
Mr. Hesse alleged in his petition that his injuries occurred on August 18, 1990, while he was working as a mechanic for Goodyear Auto Service Center, a Division of *247 Goodyear Tire & Rubber Company, at its Ryan Street location in Lake Charles, Louisiana. The petition stated in part:
[I]n inspecting the underside of a vehicle for possible water pump problems, [Mr. Hesse] got underneath a vehicle for a customer and pulled a portable work light from a retractable reel underneath the vehicle, and hung the portable work light on the side of the engine block, away from the water pump. The petitioner then reached up with his right hand and grabbed the water pump and received, suddenly and without warning, a severe, tremendous electrical shock, resulting immediately in severe personal injuries....
Mr. Hesse named several defendants in his suit, including the alleged manufacturers and/or distributors of the light, among whom G.K.N. was listed. Additionally, the petition alleged, among other things, that the accident was due to the negligence and/or strict liability of the manufacturers and/or distributors in manufacturing and/or distributing a product that was unreasonably dangerous in design; in failing to warn or adequately warn about the dangers of the product and its propensities for electrical shock; and in manufacturing, advertising, marketing, and selling a product with the knowledge that exposure to and use of the product in a mechanical garage, particularly within the zone of eighteen inches above the ground or lower, could cause severe personal injuries.
This suit has a protracted pretrial history, having originally been filed on August 9, 1991. G.K.N. filed the instant motion for summary judgment on April 8, 1999, attaching as an exhibit the affidavit of Tony Buttanshaw, the vice president of G.K.N. In the affidavit, Mr. Buttanshaw basically attested that G.K.N. was not a manufacturer but a distributor; that G.K.N. did not manufacture, modify, or evaluate the portable work light at issue; that after an investigation of the records and personnel of G.K.N., he determined that G.K.N. did not know of any defect in the design, manufacture, or assembly of any such light; that if G.K.N. had received such a portable work light, no one would have opened the shipping carton containing the light or removed the light; and that, to his knowledge, no one damaged or mishandled any portable work light while it was in the possession of G.K.N.
In his memorandum in opposition to the motion for summary judgment, Mr. Hesse conceded that G.K.N. was not a manufacturer of the light such that the Louisiana Products Liability Act (LPLA), La.R.S. 9:2800.51 et seq., did not apply to determine its liability. Rather, Mr. Hesse asserted that he was relying on theories of negligence and/or strict liability against G.K.N. for selling a product that it knew to be dangerous for use in a commercial garage. Mr. Hesse presented no evidence in opposition to the motion for summary judgment but argued at the hearing on the motion that Mr. Buttanshaw's affidavit was not based on personal knowledge in part and argued that the law-of-the-case doctrine prevented revisiting the motion. Specifically, G.K.N. originally filed a motion for summary judgment on March 16, 1993, and a hearing was held on that motion on November 4, 1993. At the hearing on that motion for summary judgment, G.K.N. filed the same affidavit of Mr. Buttanshaw in support of its motion. In a judgment signed on November 12, 1993, the trial court denied the motion, and the third circuit denied G.K.N.'s writ application on July 6, 1994, finding "no error in the trial court's ruling." Likewise, the supreme court denied writs. See Hesse v. Champ Serv. Line, 94-2091 (La.11/11/94); 644 So.2d 393.
At the hearing on the instant motion, the trial court concluded that the law-of-the-case doctrine was inapplicable and that based on the fact that the summary judgment procedure law had changed since G.K.N.'s first motion for summary judgment, the door was opened for rehearing summary judgments, "especially if they haven't been specifically reviewed by the *248 Supreme Court." Additionally, the trial court found problematic that Mr. Hesse had failed to present evidence in opposition to the affidavit of Mr. Buttanshaw. Thus, in a judgment signed on June 14, 1999, the trial court granted G.K.N's motion for summary judgment and dismissed Mr. Hesse's demands against it. The trial court also designated its judgment as a final judgement, and this appeal by Mr. Hesse followed.

OPINION
On appeal, Mr. Hesse first contends that the denial of G.K.N.'s first motion for summary judgment on the issue is the law of the case such that G.K.N. is precluded from reurging the same matter at this time. The law-of-the-case doctrine concerns (a) the binding force of trial court rulings during later stages of a trial; (b) the conclusive effects of appellate rulings at the trial on remand; and (c) the rule that, ordinarily, an appellate court will not reconsider its own rulings of law on a subsequent appeal in the same case. Barnett v. Jabusch, 94-819 (La.App. 3 Cir. 2/1/95); 649 So.2d 1158. The doctrine is applied merely as a discretionary guide. Id. Reasons for application of the doctrine include the avoidance of indefinite relitigation of the same issue, the desirability of consistency of the result in the same litigation, and the efficiency and essential fairness to the litigants of affording a single opportunity for argument and decision of the matter at issue. Id.
La.Code Civ.P. art. 966 was amended, after G.K.N. filed its first motion for summary judgment, by Acts 1996, 1st Ex. Sess., No. 9, § 1, effective May 1, 1996, to provide in part that summary judgment procedure is now favored. Prior jurisprudence had held that the summary judgment was not favored and was to be used only cautiously and sparingly. Hayes v. Autin, 96-287 (La.App. 3 Cir. 12/26/96); 685 So.2d 691, writ denied, 97-0281 (La.3/14/97); 690 So.2d 41. In fact, the court was required to strictly scrutinize the pleadings and supporting documents of the mover but to treat indulgently the documents submitted by the opposing party. Id. Moreover, at the time G.K.N. filed its first motion for summary judgment, any doubts were to be resolved against granting the summary judgment and in favor of a trial on the merits. See id. The amendment to La.Code Civ.P. art. 966 legislatively overruled the jurisprudential presumption against granting the summary judgment and in effect leveled the playing field between the parties in two ways: (1) the court should scrutinize equally the supporting documentation submitted by the parties and (2) the overriding presumption in favor of trial on the merits is removed. Id.
La.Code Civ.P. art. 966 was again amended by Acts 1997, No. 483, § 1, effective July 1, 1997, in part to add Subparagraph (C)(2), which provides:
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
Because of the potential for a different outcome due to the amendments to La. Code Civ.P. art. 966 after G.K.N. filed its first motion for summary judgment, we find that application of the law-of-the-case doctrine in this case would be improper. Mr. Hesse cites us to our decision in Ducote v. City of Alexandria, 97-947 (La.App. 3 Cir. 2/4/98); 706 So.2d 673, writ not considered, 98-1048 (La.5/29/98); 719 *249 So.2d 1275, writs denied, 98-1061, 98-1070 (La.5/29/98); 720 So.2d 671, in which we applied the law-of-the-case doctrine to our previous ruling on a writ application to the effect that there was no error in the trial court's refusal to enlarge the class of plaintiffs in the litigation. However, Ducote did not involve application of the new summary judgment procedure law, and the decision to exercise our discretion in that case to apply the doctrine was based on our finding of no error in the prior decision. Faced with changes in the summary judgment procedure law, we decline to apply the discretionary doctrine in this matter.
Mr. Hesse also contends that the trial court erred in granting G.K.N.'s motion for summary judgment because the affidavit of Mr. Buttanshaw submitted in support of the motion for summary judgment was not based upon personal knowledge. We note that Mr. Buttanshaw's affidavit essentially attempted to address G.K.N.'s role as distributor only, and not manufacturer; G.K.N.'s knowledge regarding any defect in portable work lights; and G.K.N.'s proper handling of any such lights. Without commenting on the sufficiency of the affidavit in that regard and even assuming it was sufficient to establish that G.K.N. did not know or should not have known the light was defective, the affidavit does not address the theory of liability upon which Mr. Hesse actually relied for relief.
Specifically, Mr. Hesse asserted that he was relying on theories of negligence and/or strict liability against G.K.N. for selling a product that it allegedly knew to be dangerous for use in a commercial garage. G.K.N. concedes as much in its appellate brief and in its "Supplemental Memorandum in Support of Motion for Summary Judgment and in Rebuttal of Plaintiff's Opposition" wherein it states:
A careful reading of the plaintiff's opposition shows that plaintiff's [sic] do not claim that the light itself was defective. They simply allege that it was not suitable for use in a garage. Thus, by their own admissions, plaintiff's [sic] have failed to allege any violation by defendants of the applicable duty.
However, even in the absence of a defect in a product, a retailer of a potentially dangerous product has a duty to warn purchasers of the dangers involved in using the product. American Ins. Co. v. Duo Fast Dixie, Inc., 367 So.2d 415 (La. App. 4 Cir.1979). On the other hand, there is no duty to warn of dangers about which the buyer knows or should be aware, and there is no duty to warn of the particular consequences that may flow from improper usage when those consequences are readily cognizable. Id. "A seller is required to give reasonable warnings about dangers of which he has knowledge or should have had knowledge." Toups v. Sears, Roebuck & Co., 507 So.2d 809, 817 (La.1987). In the recent case of Kelley v. Hanover Insurance Co., 98-506 (La.App. 5 Cir. 11/25/98); 722 So.2d 1133, writ denied, 98-3168 (La.2/12/99); 738 So.2d 576, a post-LPLA case, the court theorized that there might be a legal duty imposed on sellers to warn of dangers associated with normal use of products if the sellers are aware of such dangers and also know that those dangers are not set forth in the manufacturer's labels or other product information. The court explained, however, that "there is no such duty when the buyer uses the product in a totally unreasonable manner." Id. at 1138. Kelley is consistent with pre-LPLA law on sellers' liability, the LPLA not having changed the law on the liability of nonmanufacturer-sellers.
In the instant case, the affidavit of Mr. Buttanshaw does not address such factual questions as whether or not the portable work light was potentially dangerous in the context in which it was used, whether or not G.K.N. had knowledge or should have had knowledge about any such dangers, whether or not G.K.N. gave reasonable warnings about any such dangers or the dangers were set forth in the manufacturer's *250 labels or other product information, and/or whether or not the buyer's knowledge of any such dangers or particular manner of usage of the portable work light negated any duty to warn. Because G.K.N. has failed to prove that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, see La.Code Civ.P. art. 966(B), we reverse the judgment of the trial court.

DISPOSITION
For the foregoing reasons, we reverse the summary judgment of the trial court and remand for further proceedings consistent with this opinion. We assess costs of this appeal to G.K.N. Parts, Inc.
REVERSED AND REMANDED.
NOTES
[1] The suit was actually filed by Mr. Hesse and his wife, Gwendolyn, but the appeal was pursued in the name of Mr. Hesse only. For purposes of this appeal, we will refer to Mr. Hesse only as the plaintiff.